UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT L. HOLLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:18-cv-00059-JPH-MG |
| | ) |
| OFFICER D. DAY, | ) |
| CAPTAIN BREWER, | ) |
| SANDY ZIMMERMAN, | ) |
| ALETA BURNETT, | ) |
| MATTHEW LEOHR, | ) |
| | ) |
| Defendants. | ) |

**Order Granting in Part and Denying in Part
Defendants' Motion for Summary Judgment**

Robert Holleman contends that prison employees violated his rights under the First and Fourteenth Amendments by imposing sanctions against him, including transferring him to a more restricted housing unit. Defendants Matthew Leohr, Aleta Burnett, Eric Brewer, and Sandy Zimmerman seek summary judgment on both claims. Dkt. 119. For the reasons below, summary judgment is warranted with respect to Mr. Holleman's claims against Mr. Loehr, Ms. Burnett, and Captain Brewer and on Mr. Holleman's due process claim against Officer Zimmerman. However, summary judgment is not appropriate on Mr. Holleman's retaliation claim against Officer Zimmerman. Defendants' motion for summary judgment, dkt. [119], is therefore **granted in part** and **denied in part**.

1

## I. Background

### A. Claims Against Matthew Leohr, Aleta Burnett, and Eric Brewer

Mr. Holleman does not oppose "Defendants' Motion for Summary Judgment as to Mr. Loehr, Ms. Burnett, or Captain Brewer," dkt. 129 at 5 n. 1, so summary judgment is granted in their favor.

The two remaining defendants are Officer Sandy Zimmerman and Officer Dylan Day. Officer Day does not seek summary judgment. Thus, the First Amendment retaliation claim and a Due Process claim against Officer Zimmerman are the only claims addressed in this Order. Only the facts necessary to resolve these claims are discussed.

### B. Facts

Because Defendants are moving for summary judgment, the facts are presented in the light most favorable to Mr. Holleman. *Stark v. Johnson & Johnson*, --- F.4th ----, No. 20-1837, 2021 WL 3732273, at *1 (7th Cir. Aug. 24, 2021).

At all times relevant to this case, Robert Holleman was serving his sentence at Wabash Correctional Facility.[1]  Dkt. 1 (Complaint) at 1. Mr. Holleman enjoyed several privileges while at Wabash.  In 2014, he started working as a cook in the Production Kitchen. Dkt. 130-1 (Deposition of Robert Holleman) at 5. He lived in the "N-House" which is a dorm-type area that offers extra privileges and extra dayroom time to inmates. *Id.* at 24. And he had access to the PLUS program, which is a faith- and character-based re-entry program to help offenders. *See id.* 25–26.

In April 2017, Officer Day was assigned to supervise the production kitchen. Dkt. 1 at 8. As the supervisor, Officer Day was responsible for conducting strip searches of every kitchen staff member. Dkt. 72 (Answer) at 2. These searches occurred three to four times per day, at the

---

[1] Mr. Holleman has since been released to parole. However, he is currently in federal custody serving time on an unrelated federal robbery charge. *See United States v. Holleman*, 575 F.2d 139 (7th Cir. 1978).

beginning and end of every shift. Dkt. 1 at 8–9. Officer Day conducted these strip searches in a "dehumanizing and degrading" manner and often made Mr. Holleman "bend over and show [his] bottom to other people who should not have been there." Dkt. 130-1 at 12. During these searches, Officer Day also threw Mr. Holleman's clothes piece-by-piece on the floor and made "smart aleck" remarks to Mr. Holleman. *Id.* at 12–13.

Mr. Holleman filed several grievances against Officer Day for how he conducted the strip searches. Dkt. 1 at 9–11. Officer Day seemingly did not care, telling Mr. Holleman at one point his "grievances haven't done any good in the past. . .Why do you think they're going to do any good today?" Dkt. 130-1 at 15.

One day after a strip search, Mr. Holleman told Officer Day he intended to file another grievance. Dkt. 1 at 12. Officer Day believed Mr. Holleman's statement was a threat of intimidation, so he filed a conduct report. Dkt. 130-2 at 15. Mr. Holleman's disciplinary case was assigned to Officer Zimmerman. Dkt. 1 at 16.

Officer Zimmerman conducted a disciplinary hearing on May 22, 2017 and found Mr. Holleman guilty of threatening Officer Day. *Id.* at 16, 19; Dkt. 130-2 (Deposition of Sandy Zimmerman) at 15. She found Officer Day's conduct report was true and accurate and concluded that Mr. Holleman admitted to threatening Officer Day, *id.* at 15, even though Mr. Holleman steadfastly denies he "admitted" making such a threat. Dkt. 130-1 at 42. Mr. Holleman requested to present a video that showed Officer Day and Mr. Holleman at the time of the alleged threat, but Officer Zimmerman declined the request because the video lacked audio. Dkt. 130-2 at 14–16. She also declined Mr. Holleman's request to call a witness because the witness was not present at the time the threat occurred. *Id.* at 10, 13. Officer Zimmerman was aware of Mr. Holleman's prior

3

grievance against Officer Day but did not think the conduct report was written in retaliation. *Id.* at 11–12.

Despite Wabash's progressive discipline policy, Officer Zimmerman issued the maximum sanctions permitted against Mr. Holleman. *Id.* at 18. This included transferring him out of "N House" and into "P House," which was known as the "ghetto" because it was "rife with gangs" with frequent fights and robberies. Dkt. 130-1 at 28. The transfer resulted in Mr. Holleman losing his job because inmates in "P House" are ineligible for jobs, *id.* at 32, and the opportunity to participate in the PLUS program, dkt. 1 at 23. The sanctions also included a written reprimand and revocation of his phone and commissary privileges for thirty days. Dkt. 130-2 at 17.

Mr. Holleman appealed Officer Zimmerman's conduct decision, and it was ultimately reversed in July 2017. Dkt. 130-1 at 7, 28. Mr. Holleman was hired back to his old job in the production kitchen. *Id.* at 7. He nevertheless remained in "P House" for an additional four months before finally being transferred out. *Id.* at 30.

## II. Legal Standard

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case without a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inference from it in the light most favorable to the nonmoving party. *Khungar v. Access*

*Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

### III. Discussion

Officer Zimmerman claims she is entitled to summary judgment on Mr. Holleman's due process claim because he lacks any constitutional liberty interest in being transferred to another housing unit within the same facility. She further claims entitlement to summary judgment on Mr. Holleman's retaliation claim because the record lacks any evidence of retaliatory intent.

**A. Fourteenth Amendment Due Process Claim**

The Fourteenth Amendment's due process clause prohibits states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. This guarantee applies to prisoners. *Scruggs v. Jordan*, 485 F.3d 934, 938 (7th Cir. 2007) ("Prisoners do maintain due process rights.").

"When an inmate raises a due process claim for a disciplinary proceeding, he must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019). Mr. Holleman's claim does not get past the first prong.

A liberty interest "is triggered only when the confinement imposes 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The key question is "how far the treatment of [Mr. Holleman] deviates from [the] ordinary conditions [of his confinement]." *Kervin v. Barnes*, 787 F.3d 833, 836

(7th Cir. 2015). What matters is the duration of segregation and the conditions endured. *Lisle*, 933 F.3d at 721.

Mr. Holleman's claimed liberty interest is in avoiding transfer from N-House to P-House for six months because P-House was more dangerous, and he lost the privileges of N-House. But this transfer does not implicate a liberty interest.

First, the duration of his placement in N-House was not atypical or significant. Six months is not an extreme period of time for discipline. *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (noting six months of segregation without more does not trigger due process rights).

Second, the conditions themselves were not atypical or significant. N-House and P-House are both general population units. Mr. Holleman was not transferred to segregation, and there is no evidence that P-House imposed a *significant* hardship. True, P-House may be more dangerous, but that increased risk is not so significant that a jury could find the conditions unique to P-House as opposed to prison in general. *Holleman v. Zatecky*, 951 F.3d 873, 882 (7th Cir. 2020) ("[P]risoners are subjected to harsher conditions and environments than ordinary citizens."); *Giles v. Godinez*, 914 F.3d 1040, 1054 (7th Cir. 2019) ("Prison is, by its very nature, an unpleasant place to be.").

Finally, the fact that Mr. Holleman temporarily lost his job and was prevented from participating in the PLUS program did not infringe on any protected liberty interest. *Green v. Walker*, 398 F. App'x 166, 168 (7th Cir. 2010) (affirming dismissal of due process claim at summary judgment because "short-term segregation, grade demotions, loss of commissary privileges, and loss of prison employment are insufficient hardships to deprive [prisoner] of a liberty interest in violation of the Due Process Clause") (citations omitted); *see also Zimmerman*

*v. Tribble*, 226 F.3d 568, 571–72 (7th Cir. 2000) (denial of access to vocational programs does not infringe on a protected liberty interest).

Mr. Holleman's transfer no doubt resulted in him losing out on opportunities and enduring a more restrictive environment. But a liberty interest is only implicated when the restrictive conditions are "particularly harsh" or if he remained subject to those conditions for a "significantly" long time. *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013). Neither are present here.

Summary judgment is therefore appropriate on Mr. Holleman's due process claim.

### B. First Amendment Retaliation Claim

The First Amendment generally prohibits government officials from retaliating against individuals for engaging in protected speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To prevail on a First Amendment retaliation claim, a prisoner must show (1) he engaged in protected First Amendment activity; (2) an adverse action was taken against him; and (3) his protected conduct was at least a motivating factor of the adverse action. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

The first two elements are straightforward. Mr. Holleman filed grievances against Officer Day, and Officer Zimmerman issued a disciplinary decision which resulted in Mr. Holleman getting transferred and losing privileges. *See Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996) (classifying an inmate to segregation for one year in response to grievances states a retaliation claim). Officer Zimmerman does not argue otherwise.

That only leaves the third element: whether Mr. Holleman has designated evidence from which a jury could find that his grievances were at least a motivating factor for Officer Zimmerman's disciplinary decision. He has. Officer Zimmerman knew that Mr. Holleman had

previously filed grievances against Officer Day, prevented him from offering evidence at the hearing, declined Mr. Holleman's request to call a witness and issued the maximum sanction despite the progressive discipline policy to the contrary.  Moreover, Mr. Holleman denies that he admitted to the violation during the hearing.  Last, Mr. Holleman was transferred out of P-House to N-House twenty-fours after the hearing and was never transferred back even though Officer Zimmerman's decision was reversed. While no one of these facts alone would likely be sufficient to support an inference of retaliatory animus, a jury could conclude that these facts collectively show Mr. Holleman's grievances were at least a motivating factor in Officer Zimmerman's decisions. *See Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (explaining circumstantial evidence may establish a causal link between the protected activity and adverse action).

Officer Zimmerman argues that she found Mr. Holleman guilty of the conduct charge because she believed it was true—not because of any grievances Mr. Holleman filed against Officer Day. A jury could no doubt come to that conclusion. But to get there requires making credibility determinations and findings of fact, which are not proper tasks for the Court at summary judgment. *See Fkfj, Inc. v. Village of Worth*, --- F.4th ----, No. 23-96, 2021 WL 3782732, at *6 (7th Cir. Aug. 26, 2021) (explaining at summary judgment courts may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts).

### IV. Conclusion

Defendants' motion for summary judgment, dkt. [119], is **granted in part** and **denied in part**. The motion is **granted** on all claims against Mr. Loehr, Ms. Burnett, and Captain Brewer and on Mr. Holleman's due process claim against Officer Zimmerman. The **clerk is directed** to terminate Mr. Loehr, Ms. Burnett, and Captain Brewer as Defendants. The motion is **denied** on Mr. Holleman's first amendment retaliation claim against Officer Zimmerman.

Consistent with this Order, the following claims remain:

- Mr. Holleman's Eighth Amendment claim against Officer Day for allegedly subjecting Mr. Holleman to unnecessary strip searches;

- Mr. Holleman's First Amendment retaliation claim against Officer Day for allegedly filing conduct reports against Mr. Holleman in retaliation for Mr. Holleman's grievances; and

- Mr. Holleman's First Amendment retaliation claim against Officer Zimmerman for retaliating against him for filing grievances against Officer Day.

The magistrate judge is asked to hold a settlement conference. No partial final judgment shall enter at this time.

A trial date and pretrial schedule shall be set by separate Order.

**SO ORDERED.**

Date: 9/29/2021

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

J. Derek Atwood
INDIANA ATTORNEY GENERAL
derek.atwood@atg.in.gov

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Kelsey Christina Dilday
BARNES & THORNBERG LLP
kelsey.dilday@btlaw.com

Kendall Millard
BARNES & THORNBURG, LLP (Indianapolis)
kendall.millard@btlaw.com

9